UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v-<br><br>CATHERINE MORALES,<br><br>                                        Defendant. | No. 12-cr-322-9 (RJS)<br><br>ORDER |

RICHARD J. SULLIVAN, Circuit Judge:

The Court is in receipt of the attached letter from Catherine Morales, currently incarcerated and proceeding pro se, renewing her motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (*See* Doc. Nos. 682, 683.) The Court has reviewed the motion and determined that it should not be summarily denied. Accordingly, IT IS HEREBY ORDERED THAT the Clerk of Court shall electronically notify the Criminal Division of the U.S. Attorney's Office for the Southern District of New York that this Order has been issued. IT IS FURTHER ORDERED THAT the government shall file a response to Morales's motion for compassionate release – addressing, among any other issues the government sees fit, whether Morales has comported with the procedural requirements of section 3582(c)(1)(A) (*see* Doc. No. 683 at 2 n.1) – no later than May 17, 2023.

SO ORDERED.

Dated:      April 17, 2023
            New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

Catherine Morales<br>
#70574-066<br>
FCI ALICEVILLE<br>
FEDERAL CORRECTIONS<br>
P.O. BOX 4000<br>
ALICEVILLE, AL 35442

<u>April 4th, 2023</u>
United States District Court for the
Southern District of New York
Clerk of the Court
Honorable Judge Sullivan
Daniel Patrick Moynihan
U.S. Courthouse
500 Pearl Street, Suite 310
New York, New York, 10007

In Re: <u>USA v. CATHERINE MORALES</u>, Crim. No. S10 12 Cr. 322 (RJS)

Dear Clerk,

Please be advised that the enclosed is a request for reduction of sentence, in the above case, and further that Ms. Morales at the time for preparation of this motion was not in receipt of The Warden's denial of her request for compassionate release. Ms. Morales has now exhausted her remedies,[1] and resubmits the enclosed request respectfully praying that this Honorable Court Grant relief in the form of a sentencing reduction.

I, Catearine Morales, swears under the penalty and 28 USC § 1746, that the foregoing enclosed and all of the above is true and correct to the best of her knowledge and belief.

Respectfully Submitted,<br>
/s/ <i>Catherine Morales</i><br>
Catherine Morales

---

[1] The Warden's denial of Ms. Morales Request was on 9-25-2022. Ms. Morales has chosen to file her motion now after suffering through a period of extreme anxiety and depression. Moreover, MS. Morales' paperwork has been recently lost in a prison "shake down" and her request, at the time of this filing, to her counselor for a copy of the denial has gone wholly unanswered. Ms. Morales will rectify this or the she humbly request that this Honorable Court order that this document of exhaustion be produced.

IN THE UNITED STATES COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    Respondent,

v.                                    Crim. No. S10 12 Cr. 322 (RJS)

CATHERINE MORALES,

    Defendant.

## REQUEST FOR REDUCTION OF SENTENCE PER THE FIRST STEP ACT
## FOR COMPASSIONATE RELEASE PER RULE 3582(c)(1)(A)

The Defendant, Catherine Morales, Pro Se, respectfully request that this Honorable Court grant his request for compassionate release. Ms. Morales makes the instant request due the extraordinary and compelling facts surrounding her case and the totality of the circumstances of her incarceration post-conviction.

### RELEVANT BACKGROUND

Beginning in 2008, Catherine Morales was the girlfriend of the leader of a drug trafficking organization (the "DTO") operating in the Hunts Point area of the Bronx, New York. (PSR ¶ 23). The DTO was run by Adony Nina, Ms. Morales's boyfriend and by Candido Antomattei, Morales's brother. (PSR ¶¶ 24, 27). Members of the DTO distributed crack cocaine and heroin,

1

among other drugs, in the vicinity of Longwood Avenue and Beck, Kelly, and Fox Streets, and East 163rd Street and Simpson Street. (PSR ¶ 23). Several members of the DTO also carried firearms during and in relation to their drug trafficking activities, some of which were brandished and discharged. (PSR ¶ 23). Catherine Morales participated in the heroin operation for the DTO in the vicinity of East 163rd and Simpson Street. (PSR ¶ 27). Adony Nina supplied Morales with heroin, which she both distributed herself and had distributed by several workers whom she supervised. (PSR ¶ 27). In and around 2011, Adony Nina, and Candido Antomattei engaged in a several weeks long dispute over drug territory with other individuals selling narcotics within the DTO's territory at East 163rd Street and Simpson Street. (PSR ¶ 31). In particular, Nina, and Antomattei had a dispute with Bobby Morales, who was selling drugs in the DTO's territory. (PSR ¶ 31). In June 2011, Nina, and Antomattei confronted Bobby Morales on several occasions. (PSR ¶ 31). On June 28, 2011, the escalating disputes led to a verbal and physical confrontation between Catherine Morales, on the one hand, and Stacey Gonzalez (Bobby Morales's girlfriend) and Aisha and Desiree Morales (his sisters), on the other hand. (PSR ¶ 32). Ms. Morales was beaten severely by Ms. Gonzalez and her friends, moreover, Ms. Morales' life was also threatened.

Following the altercation, Catherine Morales left the vicinity of Simpson Street, where the altercation had occurred. (PSR ¶ 32). Approximately one hour later, at around 4:00 p.m., Catherine Morales and Adony Nina returned to the block. (PSR ¶ 32). Catherine Morales and Nina then entered 940 Simpson Street, where Nina handed Catherine Morales a gun and said, in sum and substance, "Am I going to have to take care of this, or will you do it?" (PSR ¶ 32). Morales agreed to do it. (PSR ¶ 32). Catherine Morales and Adony Nina then walked to the vicinity of 1018 East 163rd Street, where the three women were standing with others in front of the building. (PSR ¶ 33). At the behest of her boyfriend, Catherine Morales fired several shots at the women. (PSR ¶ 33). One of the shots struck Aisha Morales in the head. (PSR ¶ 33). Aisha Morales was subsequently pronounced dead at a local hospital. (PSR ¶ 33). She was 21 years old. (PSR ¶ 33). After the murder, officers of the New York City Police Department sought Catherine Morales's arrest, but she became a fugitive and remained so for several years. (PSR ¶ 34). During her time in hiding, Morales remained in touch with members of the DTO; indeed, a video recovered from Adony Nina's cellphone on March 24, 2012, proved that Nina and Morales had continued engaging in an intimate relationship while Morales was a fugitive. (PSR ¶ 34).

2

Superseding Indictment S10 12 Cr. 322 (RJS) (the "S10 Indictment") was unsealed on April 9, 2014, charging Catherine Morales with: (i) conspiracy to distribute one kilogram and more of heroin and 280 grams and more of cocaine base, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A) [Count One]; (ii) possessing firearms which were brandished and discharged, in connection with the narcotics conspiracy charged in Count One, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii) and (iii) [Count Two]; (iii) killing Aisha Morales while engaged in the narcotics conspiracy charged in Count One, in violation of Title 21, United States Code, Section 848(e)(1)(A) [Count Three]; and (iv) possessing a firearm in relation to the narcotics trafficking crime charged in Count One and with causing the death of Aisha Morales in the course of that narcotics trafficking crime, in violation of Title 18, United States Code, Section 924(j) [Count Four]. (A. 13; Ex. B). Morales thus faced a mandatory minimum sentence of 10 years on Count One, 10 years on Count Two, 20 years' on Count Three, and 25 years on Count Four, and faced a total mandatory minimum sentence of 55 years' imprisonment.

Ms. Morales' counsel was instrumental in the pre-trial plea negotiations which went on for several months. Ms. Morales first plea of 25-27 years imprisonment was discussed by counsel not only with Ms. Morales but also with Ms. Morales family. (See Exh.2). Ms. Morales counsel advised Ms. Morales and her family that she should not go to trial because there was no way he could convince a jury she was innocent based on the government's evidence against her. Ms. Morales and her family agreed that the only option Ms. Morales had was to plead guilty and conveyed this sentiment to her attorney. At no time after this decision- which was prior to November 4, 2014,- did Ms. Morales want to go to trial or believe that going to trial was in her best interest.

As the record reflects Ms. Morales was first offered a plea of 25-27 years; 5-7 years over the "plea deal" counsel advised her to hold out for and further advised her that he could deliver. This 25-27 year plea was offered at the time Ms. Morales was ad- vised by counsel- in which her and her family agreed- that due to the government's evidence she should not go to trial because she would be found guilty and suffer a harsher punishment. (See Exh.2).

Ms. Morales did not accept the 25-27 year plea because counsel advised her not to accept it because he could get a better deal. Ms. Morales had no reason to believe that even if counsel was

3

not successful she would be offered 2 later pleas with a significantly harsher penalty that exposed her to spending the rest of her life in prison. Had Ms. Morales been advised that if counsel was not successful the government could rescind or fail to reopen their plea offer of 25-27 years; the Ms. Morales would have accepted the government's plea of 25-27 years and not risk any possibility of spending the rest of her life in prison.

After the Ms. Morales filed a Section 2255 motion the Government contacted Mr. Neufeld in early November 2018 regarding the possibility of obtaining an affidavit from him responding to claims raised by Ms. Morales in her pending habeas petition (the "Petition"). In response, Mr. Neufeld confirmed that Ms. Morales was provided with two different plea agreements, and that he advised Ms. Morales as to which of those plea agreements she should accept. Mr. Neufeld then expressed his view that, in hindsight, he had given Ms. Morales "bad advice." In a subsequent e-mail, Mr. Neufeld clarified the terms of one of the two plea agreements offered to Ms. Morales. Ultimately, the Government did not seek an affidavit from Mr. Neufeld as part of its response to the Petition.

## DISCUSSION

### I. Relevant Law

The Defendant, Catherine Morales, Pro Se, can only obtain relief under § 3582(c)(1)(A)(i) if the court finds, "after considering the factors set forth in section 3553(a) to the extent they are applicable," that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The statute also provides—as it did before the passage of the First Step Act—that any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). *United States v. Littrell*, 461 F.Supp.3d 899, 903–04 (E.D.Mo., 2020).

In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C. § 3582(c)(1)(A).3 Prior to the First Step Act in 2018, the BOP had the sole authority to petition the court for sentence modifications on compassionate release grounds. *Coleman v. United States*, 465 F.Supp.3d 543, 545–46 (E.D. Va. 2020). Following enactment of the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences if "extraordinary and compelling reasons warrant such a reduction."4 Id. (quoting *525 18 U.S.C. § 3582(c)(1)(A)(i)). Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), see 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct.

In September 2020, the Second Circuit decided United States v. Brooker, 976 F.3d 228 (2d Cir. 2020), which instructed district courts on how to evaluate extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A)(i). The Second Circuit held that the Sentencing Commission's Policy Statement defining extraordinary and compelling reasons does not bind district courts when a defendant brings a motion for a sentence reduction directly. Id. at 237. As a result, district courts are free "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release ... whether in isolation or combination." Id. at 237–38. "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation ... alone shall not be considered an extraordinary and compelling reason.' " Id. (quoting 28 U.S.C. § 994(t) (emphasis added)). *United States v. Qadar*, 2021 WL 3087956, at *5 (E.D.N.Y., 2021).

    (i)    Exhaustion Requirement

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

5

While the Second Circuit has not squarely addressed the question of whether the exhaustion requirement in § 3582(c)(1)(A) is jurisdictional, in a related context it has firmly disagreed with the characterization by certain other circuits that § 3582(c)(2)4 is jurisdictional. See *United States v. Johnson*, 732 F.3d 109, 116 n.11 (2d Cir. 2013). The Court finds that such holding by the Second Circuit should also extend to the exhaustion requirement in § 3582(c)(1)(A), because § 3582(c)(1)(A) does not "clearly state" that the exhaustion requirement is jurisdictional. Instead, the exhaustion requirement in § 3582(c)(1)(A) merely controls who -- the BOP or defendant -- may move for compassionate release and when such a motion may be made. It simply delineates the process for a party to obtain judicial review, not referring to the adjudicatory capacity of courts. That is, § 3582(c)(1)(A) "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the [federal] courts." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).

Moreover, § 3582 is "not part of a jurisdictional portion of the criminal code but part of the chapter dealing generally with sentences of imprisonment." *United States v. Taylor*, 778 F.3d 667, 671 (7th Cir. 2015). Section 3582 lists factors to be considered in imposing a sentence and provides that a prison sentence is final and appealable. See 18 U.S.C. § 3582. Similarly, subsection (c) states that courts "may not modify a term of imprisonment once it has been imposed," with few enumerated exceptions, assuming a priori courts' jurisdiction exists over these sentences. Id. § 3582(c). Tellingly, the word "jurisdiction" or its variation never appears. Accordingly, the Court concludes that the exhaustion requirement in § 3582(c)(1)(A) is a claim-processing rule that does not deprive this Court of jurisdiction. *United States v. Haney*, 454 F.Supp.3d 316, 319–20 (S.D.N.Y., 2020).

    (ii)    Extraordinary and Compelling Reasons

"A motion for reconsideration may be granted where the moving party identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *United States v. Mathis*, No. 02-CR-891 (ARR), 2020 WL 6784136,

at *1 (E.D.N.Y. Nov. 18, 2020) (quoting *United States v. Nehmad*, No. 16-CR-829 (AKH), 2020 WL 6719380, at *1 (S.D.N.Y. Nov. 16, 2020)); *see also* Local Crim. R. 49.1(d). *United States v. Qadar*, 2021 WL 3087956, at *6 (E.D.N.Y., 2021)

The court stated that "[t]here is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered ... to consider any extraordinary and compelling reason for release that a defendant might raise.'" Id. at 284 (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)). *United States v. Sappleton*, 2021 WL 598232, at *3 (D.Md., 2021).

The Sentencing Commission's policy statement explicating "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i) does not bind a district court, but it does provide some guidance. See id. at 236. Where a defendant seeks a sentencing modification due to medical conditions, the Sentencing Commission suggests that "extraordinary and compelling reasons" may exist in two scenarios. First, "[a] defendant is suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S. Sentencing Comm'n, U.S. Sentencing Guidelines Manual § 1B1.13 cmt. 1(A)(i) (2018) ("U.S.S.G."). Second, "[a] defendant is ... suffering from a serious physical or medical condition, ... suffering from a serious functional or cognitive impairment, or ... experiencing deteriorating physical or mental health because of the aging process" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which [the defendant] is not expected to recover." Id. cmt. 1(A)(ii).

Where a defendant seeks a sentencing modification due to family circumstances, the Sentencing Commission suggests that "[t]he death or incapacitation of the caregiver of the defendant's minor child" or "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for" that person may constitute extraordinary and compelling reasons. Id. cmt. 1(C). In any scenario, "an extraordinary and compelling reason need

7

not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." Id. cmt. 2. *United States v. Qadar*, 2021 WL 3087956, at *6–7 (E.D.N.Y., 2021).

      (iii)    Relief Requested

It bears remembering that compassionate release is a misnomer. 18 U.S.C. § 3582(c)(1)(A) in fact speaks of sentence reductions. A district court could, for instance, reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place. Id. Beyond this, a district court's discretion in this area—as in all sentencing matters—is broad. See *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008) (en banc) (noting a district court's "very wide latitude" in sentencing). The only statutory limit on what a court may consider to be extraordinary and compelling *238 5 is that "[r]ehabilitation ... alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t) (emphasis added). *United States v. Brooker*, 976 F.3d 228, 237–38 (C.A.2 (Vt.), 2020).

Therefore, Ms. Morales, respectfully request that, this Honorable Court grant her compassionate release; in lieu, of her pending Section 2255 which request that this Honorable Court find that her counsel's, admitted bad, advice led to her accepting a plea that was more severe than a more favorable plea.

**II.**    Reason For Relief

A. Medical conditions and effects of prolonged COVID lockdown

Many courts have held that the COVID-19 pandemic combined with a defendant's high-risk conditions recognized by the Centers for Disease Control ("CDC") may constitute extraordinary and compelling reasons justifying release. See Cato, 2020 WL 5709177, at *4 (collecting cases). However, some courts have found that "[a]ccess to an approved COVID-19 vaccine generally counsels against compassionate release based on COVID risk, due to the strong evidence of the

8

effectiveness of each of the vaccines." *United States v. Mena*, No. 16-CR-850 (ER), 2021 WL 2562442, at *3 (S.D.N.Y. June 23, 2021) (citing United States v. Kosic, 18-CR-30 (PAC), 2021 WL 1026498, at *2 (S.D.N.Y. Mar. 17, 2021)). But see *United States v. Sawyer*, No. 15-CR-160(1) (BO), 2021 WL 3051985, at *2 (E.D.N.C. June 15, 2021) (finding a defendant with multiple underlying conditions had demonstrated extraordinary and compelling reasons despite vaccination in part because of concerns that COVID-19 vaccines are less effective for obese people and those with other severe health conditions). *United States v. Qadar*, 2021 WL 3087956, at *8 (E.D.N.Y., 2021)

Regardless of defendants' vaccination status, "courts reviewing motions for sentence modifications have considered the extent to which onerous lockdowns and restrictions imposed by correctional facilities attempting to control the spread of the virus have made sentences 'harsher and more punitive than would otherwise have been the case.' " Hatcher, 2021 WL 1535310, at *3 (quoting United States v. Rodriguez, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020)); see also *United States v. Reiter*, No. 87-CR-132 (VSB), 2021 WL 1424332, at *8 (S.D.N.Y. Apr. 15, 2021) (finding the harshness of a vaccinated defendant's conditions of confinement "militate[d] in favor of finding 'extraordinary and compelling reasons' " despite decreased medical risk); *United States v. Mcrae*, No. 17-CR-643 (PAE), 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021) ("[A] day spent in prison under extreme lockdown and in well-founded fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison."). *9 "While harsh conditions of confinement alone are insufficient," if those conditions deprive defendants of the services they need to treat "serious mental and physical health issues," such deprivations may support a finding of extraordinary and compelling reasons. Hatcher, 2021 WL 1535310, at *4. Indeed, in *United States v. Pina*, the court found extraordinary and compelling reasons where prolonged lockdown "substantially curtailed" a defendant's ability to treat his Post-Traumatic Stress Disorder through exercise and "confinement to his cell for 22 hours a day" exacerbated his depression and anxiety. No. 18-CR-179 (JSR), 2020 WL 3545514, at *2 (S.D.N.Y. June 29, 2020). And in Hatcher, the court found the same where prolonged lockdown precluded the defendant, who was struggling with mental health and substance abuse issues, from accessing "mental health care" and "drug abuse treatment." 2021 WL 1535310, at *4. *United States v. Qadar*, 2021 WL 3087956, at *8–9 (E.D.N.Y., 2021)

9

Ms. Morales, suffers from hypertension and severe bouts of depression. Moreover, she is consistently on lockdown[1] or modified lock-down where she has spent, on average, 20 hours a week outside of her cell since November, 2021. As a result, many of Ms. Morales request for medical attention have gone unheard or ignored. Lastly, loss of appetite and insomnia are common occurrences for Ms. Morales.[2]

B. Family Hardship

The Sentencing Commission Policy Statement suggests that the "incapacitation of [a] spouse or registered partner when [a defendant] would be the only available caregiver for [that person]" could constitute an extraordinary and compelling reason in itself. U.S.S.G. § 1B1.13 cmt. 1(C)(ii). Many courts, however, have credited family circumstances that do not quite meet this standard toward finding extraordinary and compelling reasons. For example, a court in the District of Connecticut found that even though a defendant "would not be the only available caregiver" for his mother, who was suffering from a terminal lung disease, he "could assist his mother in a way that no other person currently can ... as a live-in caregiver." *United States v. Cruz*, No. 94-CR-112 (JCH), 2021 WL 1326851, at *10–11 (D. Conn. Apr. 9, 2021). Similarly, a court in the Northern District of Illinois found that even though "there may be other family

---

[1] Coronavirus disease 2019 (COVID-19) is suspected to mainly be more deleterious in patients with underlying cardiovascular diseases (CVD). There is a strong association between hypertension and COVID-19 severity. The binding of SARS-CoV-2 to the angiotensin-converting enzyme 2 (ACE2) leads to deregulation of the renin-angiotensin-aldosterone system (RAAS) through down-regulation of ACE2 with subsequent increment of the harmful Ang II serum levels and reduction of the protective Ang-(1–7). Both angiotensin receptor blockers (ARBs) and angiotensin-converting enzyme inhibitors (ACEIs) are commonly used to manage hypertension. Hypertension and its management in COVID-19 patients: The assorted view (nih.gov)

"A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); see Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir.1996) (per curiam),2 "and we read Sandin to require that we look to actual punishment in making this determination," Scott, 156 F.3d at 287. Factors relevant to determining whether the plaintiff endured an "atypical and significant hardship" include "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions" and "the duration of the disciplinary segregation imposed compared to discretionary confinement." Wright v. Coughlin, 132 F.3d 133, 136 (2d Cir.1998). See *Palmer v. Richards*, 364 F.3d 60, 64 (2nd Cir. ,2004)

[2] "I have anxiety and a mood disorder (manic bipolar) They have me on trileptal almost the highest dosage I was on the highest dosage but they had to lower it for my sodium intake."

10

members who could care for" a defendant's wife, who was suffering from a serious liver disease that had impaired her immune system, the defendant "would reasonably be expected to be [his wife's] primary caregiver" as her spouse. *United States v. Hansen*, No. 17-CR-50062 (MFK), 2020 WL 2219068, at *2 (N.D. Ill. May 7, 2020); see also *United States v. Ledezma-Rodriguez*, 472 F. Supp. 3d 498, 507 (S.D. Iowa 2020) (considering "the need to care for a parent" as "supportive of release" even where the defendant "did not produce enough evidence that he is the only available child who can aid[ ] his mother"). *United States v. Qadar*, 2021 WL 3087956, at *9 (E.D.N.Y., 2021).

Ms. Morales's mother is chronically ill. As to what her diagnosis is, Ms. Morales's family has spared her the details due to her instant incarceration. Ms. Morales is unaware if her mom is dying or if she is just ill. However, her mom's condition is severe.

C. Legal Reason for Relief

As stated prior, this Honorable Court may fashion any sentence it sees fit to compensate as compassionate release. Ms. Morales has steadfastly sought to improve herself while incarcerated taking many programs and exceling at her post-conviction rehabilitation. (See EXH. 1). She is contrite and extremely remorseful for her actions, (See EXH .2), which led to the senseless taking of Ms. Aisha Morales life. She further continues to sincerely apologize to and pray for the forgiveness of the family of Ms. Aisha Morales for the decisions she made.[3]

Furthermore, Ms. Morales wanted to take responsibility for her actions in this case. However, she was told by her boyfriend that if she turned herself in "they" would build a case against him and his brother and send them away for life. Moreover, that he was getting funds together to provide her with a lawyer that could better represent her legal interest, in the instant case:

---

[3] For all these reasons, to impose a sentence that is "sufficient, but not greater than necessary," sentencing courts should generally impose lesser sentences on adolescent offenders than on similarly situated adult offenders. And this also means that courts cannot simply treat anyone over 18 as an "adult" for sentencing purposes but must inquire whether the human being they are about to sentence is still in many respects an adolescent. *United States v. Ramsay*, 538 F.Supp.3d 407, 423 (S.D.N.Y., 2021)

11

I, Ms. Morales, Pro Se, swear that the forgoing is true and correct, to the best of my knowledge and belief, per the penalty of perjury and 28 U.S.C. § 1746.

Dated: April 4th, 2022                                        /S/ *Catherine Morales*
                                                                Catherine Morales

Lastly, pursuant to the government's response motion[4] Ms. Morales attorney conceded to providing "bad advice". The government argues that this means nothing at all. That providing "bad advice" is permitted because the attorney's bad advice either did not fall below professional norms and/or did not prejudice the defendant. The Supreme Court decided that bad advice by attorney's were below professional norms in instances which are present in the instant case.[5] Moreover, once established the probable outcome is the metric for prejudice.[6] In the instant case, it is clear that Ms. Morales turned down a plea for a better one, that never came, based on counsel's assurance that a better plea could be had.[7] There are no hypotheticals or contingencies

---

[4] 02/23/2019   651   LETTER by USA as to Catherine Morales addressed to Judge Richard J. Sullivan from Christopher J. DiMase dated February 23, 2019 re: Pending Habeas Petition Document filed by USA. (Dimase, Christopher) (Entered: 02/23/2019)

07/26/2019   656   MEMORANDUM in Opposition by USA as to Catherine Morales re 646 MOTION to Vacate under 28 U.S.C. 2255. (Attachments: # 1 Exhibit Ex.A - Part 1, # 2 Exhibit Ex.A - Part 2, # 3 Exhibit Ex.A - Part 3, # 4 Exhibit Ex.A - Part 4, # 5 Exhibit Exhibit B, # 6 Exhibit Exhibit C, # 7 Exhibit Exhibit D, # 8 Exhibit Exhibit E, # 9 Exhibit Exhibit F, # 10 Exhibit Exhibit G)(Krissoff, Sarah) (Entered: 07/26/2019)

[5] In this case all parties agree the performance of respondent's counsel was deficient when he advised respondent to reject the plea offer on the grounds he could not be convicted at trial. In light of this concession, it is unnecessary for this Court to explore the issue. *Lafler v. Cooper*, 132 S.Ct. 1376, 1384, 566 U.S. 156, 163 (U.S.,2012)

[6] See Frye, post, at 1410, 132 S.Ct. 1399 (noting that Strickland 's inquiry, as applied to advice with respect to plea bargains, turns on "whether 'the result of the proceeding would have been different' " (quoting Strickland, supra, at 694, 104 S.Ct. 2052)); see also Hill, 474 U.S., at 59, 106 S.Ct. 366 ("The ... 'prejudice ...' requirement ... focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process") *Lafler v. Cooper*, 132 S.Ct. 1376, 1384, 566 U.S. 156, 163 (U.S.,2012)

[7] Case 1:12-cr-00322-RJS   Document 555   Filed 09/30/15   Page 8 of 11
During the plea discussions that preceded Ms. Morales's entry of a guilty plea, I requested that she be allowed to plead to manslaughter, rather than murder; which would have capped her liability for the homicide at 15 years. The facts available at that time, which were only reinforced by testimony in the second Nina trial, supported the state of mind resulting from a "sudden quarrel or heat of passion." 18U.S.C.§ 1112. The government rejected this

that can factor into that one single decision. Ms. Morales listened to the advice of her lawyer and the lawyer thereafter admitted the advice was bad advice. (See DKT. 651). Counsel told Ms. Morales, unequivocally, that she should turn down the plea because he could get a better one. As a result, Ms. Morales is doing a more severe sentence.

Ms. Morales request respectfully that this Honorable Court, look at her instant request in totality when determining whether compassionate release is viable in the instant case.

## CONCLUSION

The defendant, Catherine Morales, pro se, pray that this Honorable Court consider her instant motion in its totality and that it find that compassionate release is warranted in the instant case.[8] Lastly, Mr. Morales and her family request that Ms. Morales be resentenced to the minimum term of 20 years.[9]

---

request. Since manslaughter is not a lesser included offense of murder in furtherance of a narcotics conspiracy, a manslaughter verdict would not have been an option at trial, as it would have been in a New York State prosecution. P.L.§ 125.27(2)(a).

[8] In preparations for this motion Ms. Morales was not aware or I possession of this Court's denial of her Section 2255 motion. Please be advised that Ms. Morales would have this Court construe her request in its totality and does not challenge the legality of this Court's ruling. Moreover, she leans on the compassion of this Court in her humble request for leniency.

03/31/2022  680  MEMORANDUM AND ORDER as to Catherine Morales. IT IS HEREBY ORDERED THAT Moraless Petition under section 2255 and her Motion to Vacate pursuant to Rule 60 are DENIED. In addition, because Morales has not made a substantial showing of the denial of a constitutional right, 28 U.S.C. § 2253(c)(2), the Court will not issue a certificate of appealability. See Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005). Furthermore, because any appeal would lack[] an arguable basis in law or fact, Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir. 1995), the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and, therefore, Morales may not proceed in forma pauperis. See Coppedge v. United States, 369 U.S. 438, 44445 (1962). The Clerk of Court is respectfully directed to terminate the motions pending at docket numbers 646 and 676 of 12-cr-322, to close case 18-cv-10120, and to mail a copy of this order to Morales. (Signed by Judge Richard J. Sullivan on 3/31/2022) (See ORDER set forth) (Copy mailed to Defendant at: CATHERINE MORALES,Register Number: 70574-066, FCI Aliceville, FEDERAL CORRECTIONAL INSTITUTION, P.O.BOX 4000, ALICEVILLE, AL 35442) (ap) (Entered: 03/31/2022)

[9] As Judge Blake recently observed, the average federal sentence for murder has declined in recent years. See United States v. Bryant, 95-202-CCB-3, 2020 WL 2085471, at *5 n.8 (D. Md. Apr. 30, 2020) ("According to statistics released by the United States Sentencing Commission for fiscal year 2018, the national average sentence for murder was 291 months, and the Fourth Circuit average was 327 months.") (citing United States v. Redd, 444 F.

13

Dated: April 4th, 2023                                    Respectfully Submitted,

/S/ *Catherine Morales*
Catherine Morales
#70574-066
FCI ALICEVILLE
FEDERAL CORRECTIONS
P.O.BOX 4000
ALICEVILLE, AL  35442

---

Supp. 3d 717, 728 (E.D. Va. 2020)); United States Sentencing Commission, Statistical Information Packet, Fiscal Year 2018, Fourth Circuit, available at (https://www.ussc.gov/sites/default/files/pdf/research-andpublications/federal- sentencing-statistics/state-district-circuit/20l 8/4c18.pdt)

 SENTENCE LENGTH BY TYPE OF CRIME Fiscal Year 2021 National Second Circuit TYPE OF CRIME Mean Months Median Months N Mean Months Median Months N TOTAL 48 24 57,286 46 24 2,424 Administration of Justice 13 8 512 14 6 39 Antitrust 3 3 6 -- -- 2 Arson 63 48 79 31 12 5 Assault 57 36 668 81 57 45 Bribery/Corruption 20 12 247 18 8 29 Burglary/Trespass 23 14 64 14 18 3 Child Pornography 108 90 1,215 89 83 56 Commercialized Vice 14 11 114 33 0 4 Drug Possession 1 0 309 0 0 20 Drug Trafficking 74 60 17,608 49 36 872 Environmental 2 0 173 1 0 7 Extortion/Racketeering 25 15 116 24 16 36 Firearms 48 37 8,150 35 28 298 Food and Drug 9 1 47 1 0 3 Forgery/Counter/Copyright 16 12 137 4 2 10 Fraud/Theft/Embezzlement 20 12 4,571 17 6 379 Immigration 13 8 16,937 12 6 160 Individual Rights 32 3 69 19 17 5 Kidnapping 166 123 92 160 108 7 Manslaughter 69 59 56 -- -- 0 Money Laundering 57 30 1,028 24 11 100 Murder 244 231 257 210 198 51 National Defense 37 26 217 117 40 8 Obscenity/Other Sex Offenses 22 18 298 22 18 12 Prison Offenses 11 8 532 6 5 11 Robbery 104 90 1,300 73 60 113 Sexual Abuse 211 180 1,062 207 180 67 Stalking/Harassing 26 18 219 21 17 22 Tax 14 12 421 10 4 40 Other 2 0 782 0 0 2

14

15

\# 70574-066
FCI Aliceville
Federal Corrections Institution
P.O. Box 4000
Aliceville, AL 35442






U.S. District Court
Southern District of New York
Clerk of the Court
Honorable Judge Sullivan
U.S. Courthouse
500 Pearl Street, Suite 310
New York, New York, 10007

