UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

CATHERINE MORALES,

              Defendant.

No. 12-cr-322-9 (RJS)

MEMORANDUM
AND ORDER

RICHARD J. SULLIVAN, Circuit Judge:

    Defendant Catherine Morales, proceeding pro se, brings this renewed motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) (the "First Step Act"). (Doc. No. 705; see also Doc. No. 724.) The government opposes. (Doc. Nos. 713, 722–23.) For the reasons set forth below, Morales's motion is DENIED without prejudice to future renewal.

    Beginning in at least 2008, Catherine Morales was a part of a drug trafficking organization in the Bronx (the "DTO") run by her boyfriend, Adony Nina, and her brother, Candido Antomattei. (Doc. No. 472 ("PSR") ¶¶ 23, 27, 34.) Morales had a major role in the DTO, distributing heroin personally and managing several workers who also sold heroin on behalf of the DTO. (Id. ¶ 27.) Around June 2011, rival drug dealers began encroaching on Morales's territory, prompting Morales to threaten one of the rival dealers with death unless he started selling drugs for the DTO. (Id. ¶ 31.) In response to the threat, Morales was confronted by three women associated with the rival dealer – one of whom was Aisha Morales, the rival dealer's twenty-one-year-old sister – and a physical altercation ensued. (Id. ¶¶ 31–33.)[1] Morales reported the incident to Nina, who handed

---

[1] Catherine Morales and Aisha Morales are not related. For the sake of clarity, the Court refers to Catherine Morales by her last name and hereinafter refers to Aisha Morales by her first name. Additionally, the Court notes that Morales's assertion that the confrontation began because one of the women may have also had a sexual relationship with Nina is contradicted by the PSR, to which she did not object, and by her own counsel's sentencing submission. (Compare Doc. No. 724 at 5–6 & n.7, with PSR ¶¶ 31–33, and Doc. No. 577 at 5, and Doc. No. 555 at 5–6.)

her a firearm and asked, in sum and substance, "[a]m I going to have to take care of this, or will you do it?"  (*Id*. ¶ 32.)  Morales then returned to the scene of the fight and fired several shots in broad daylight at the three women.  (*Id.* ¶ 33.)  One of those shots struck Aisha in the head, killing her.  (*Id*.)  Following the shooting, Morales went on the run, living as a fugitive while maintaining contact with Nina and Antomattei.  (*Id*. ¶ 34.)  After more than two years, Morales was finally arrested on August 27, 2013.  (*Id*. ¶ 36.)

In February 2015, Morales pleaded guilty to intentionally killing Aisha in furtherance of a criminal enterprise, in violation of 21 U.S.C. § 848(e)(1)(A).  (Doc. No. 451.)  Thereafter, in October 2015, the Court sentenced Morales to forty-five years' imprisonment and five years' supervised release.  (Doc. No. 570 at 2–3; Doc. No. 577 at 41–49.)  Morales now resides at FCI Aliceville, and the Bureau of Prisons ("BOP") currently projects that she will be released in July 2051.  *See Find an Inmate*, Federal Bureau of Prisons, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited July 26, 2023).

In April 2022, Morales filed her first motion for compassionate release.  (Doc. No. 682.)  Pursuant to 18 U.S.C. § 3582(c)(1)(A), a district court can reduce a defendant's sentence where (1) the defendant has exhausted administrative remedies by requesting such relief from prison authorities, (2) extraordinary and compelling reasons warrant such a reduction, and (3) such relief is consistent with the sentencing objectives set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Keitt*, 21 F.4th 67, 71 & n.2 (2d Cir. 2021).  "[I]f a district court determines that one of those conditions is lacking, it need not address the remaining ones."  *Keitt*, 21 F.4th at 73.  Applying these principles, in June 2022, the Court denied Morales's first motion for failure to properly exhaust administrative remedies – but invited her to renew her motion once she had.  (Doc. No. 683.)  Morales did so in April 2023, submitting materially similar

arguments for compassionate release or, in the alternative, a sentence reduction to twenty years' imprisonment. (Doc. No. 705 at 15; Doc. No. 724 at 8; *see also generally* Doc. No. 682.) Specifically, Morales now moves the Court for some form of a sentence reduction based on the impact that pandemic-imposed lockdowns have had on her ability to get treatment for hypertension and depression (Doc. No. 705 at 10–12); an unspecified severe illness affecting her mother (*id*. at 12–13); her expressions of remorse, efforts at post-conviction rehabilitation, and expanded explanation for why she became a fugitive (*id*. at 13–14; *see also* Doc. No. 724 at 4–5)[2]; and her previously asserted claims of ineffective assistance of counsel in connection with her guilty plea and sentencing (Doc. No. 705 at 5–6, 14–15; *see also, e.g.*, Doc. No. 646 at 31).

As an initial matter, it is still not clear that Morales has sufficiently exhausted her administrative remedies.[3] A court may only reduce a defendant's term of imprisonment "upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of [thirty] days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Samuels*, No. 08-cr-789 (RJS), 2020 WL 7696004, at *3 (S.D.N.Y. Dec. 28, 2020) (explaining that as a function of statute and regulation, a defendant must first must make a request to the warden of her facility for the BOP to file a compassionate-release motion with the district court on her behalf, and that if the warden denies the request, the defendant must fully exhaust all administrative rights to appeal, including appeals to both the appropriate BOP Regional Director

---

[2] In support of her assertions of post-conviction rehabilitation and contrition, Morales cites to two exhibits: "EXH. 1" and "EXH. 2." (Doc. No. 705 at 13.) The Court, however, is not in possession of them, as Morales failed to attach them to the present motion.

[3] The government has not waived or forfeited the exhaustion defense at this time (Doc. No. 713 at 5); the Court therefore will consider it. *See United States v. Saladino*, 7 F.4th 120, 122–23 (2d Cir. 2021).

3

and the BOP General Counsel). While Morales alleges that the warden of her facility denied her request for compassionate release on September 25, 2022, she has not produced any evidence to substantiate that claim (Doc. No. 705 at 2 n.1; *see also* Doc. No. 724 at 6–8), and FCI Aliceville reported that, as of May 18, 2023, it has no record of any such request (Doc. No. 713 at 5). In any event, even if the Court were to assume that Morales made a request, and that it was denied by the warden, she does not contend that she *appealed* that denial, as required by statute and regulation. *See Samuels*, 2020 WL 7696004, at *3. Accordingly, the Court finds that Morales has not adequately exhausted all administrative remedies.

      Moreover, even if it could be argued that Morales has properly exhausted administrative remedies, she has not shown extraordinary and compelling reasons to warrant a sentence reduction. *First*, while Morales complains that pandemic-related lockdowns at FCI Aliceville have impeded her ability to get care for hypertension and depression (Doc. No. 705 at 10–12), on the present record, the Court does not find any indication that Morales in fact has hypertension (*see, e.g.*, Doc. No. 723, Ex. A at 137), or that she was denied medical treatment for any of her diagnosed mental illnesses during the pandemic (*see, e.g.*, *id.* at 13, 22, 91, 103, 117, 125, 157, 225). *Second*, the fact that Morales's mother has some unspecified severe illness (Doc. No. 705 at 12–13) does not justify compassionate release without further evidence indicating that Morales is uniquely situated to care for her mother. *See, e.g.*, *United States v. John*, No. 15-cr-208 (CM), 2020 WL 6581217, at *2 (S.D.N.Y. Nov. 10, 2020).[4] *Third*, to the extent that Morales suggests that her remorse and post-conviction rehabilitation present extraordinary and compelling reasons for relief (Doc.

---

[4] That view is further supported by the United States Sentencing Commission's adopted amendments to U.S.S.G. § 1B1.13, set to take effect November 1, 2023. *See* Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28,254, 28,255 (May 3, 2023) (suggesting that the incapacitation of a defendant's parent presents an extraordinary and compelling circumstance "when the defendant would be the only available caregiver for the parent"). The amendments are obviously not binding on the Court, but nevertheless provide helpful guidance. *See, e.g.*, *United States v. Jenkins*, No. 16-cr-391 (JMF), 2023 WL 3479525, at *1 n.2 (S.D.N.Y. May 16, 2023).

No. 705 at 13–14), the Court does not find those circumstances to be out of the ordinary for defendants serving long prison terms. *See, e.g.*, 28 U.S.C. § 994(t); *United States v. Bennett*, No. 15-cr-95 (JPC), 2022 WL 3445349, at *3 (S.D.N.Y. Aug. 17, 2022). *Fourth*, Morales asserts that her previous attorney provided "bad advice" in connection with her guilty plea. (Doc. No. 705 at 5–6, 14–15.) But such an argument, sounding in ineffective assistance of counsel, does not provide a basis for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *See United States v. Jacques*, No. 20-3276, 2022 WL 894695, at *2 (2d Cir. Mar. 28, 2022); *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021), *cert. denied*, 142 S. Ct. 1363 (2022). And even if it did, the Court does not agree that Morales's attorney's conduct was objectively unreasonable – or generated an extraordinary and compelling circumstance – for the reasons already explained in the Court's order denying her petition under 28 U.S.C. § 2255. (Doc. No. 680 at 7–8.)

Finally, in addition to her failure to establish the exhaustion of administrative remedies and the existence of extraordinary and compelling reasons for a sentencing reduction, Morales has also failed to demonstrate that a reduction is appropriate under the factors set forth in 18 U.S.C. § 3553(a). Under that provision, sentencing courts are required to consider "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence "to reflect the seriousness of the offense," "to promote respect for the law," "to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," "to protect the public from further crimes of the defendant," "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," and "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1), (a)(2)(A)–(D), (a)(6).

At Morales's original sentencing, the Court considered but was ultimately not persuaded by a number of arguments that might have counseled toward leniency, including that Morales had a traumatic childhood and that her actions were influenced by Nina, the "charismatic" leader of the DTO.  (Doc. No. 577 at 41, 45–46.)  Instead, other concerning facts compelled the Court to impose a forty-five-year sentence – well within the Guidelines range of thirty years to life.  Chief among those facts was the "incredibly serious" nature of the crime, whereby Morales murdered a young victim by firing multiple shots into a crowd in furtherance of a prolonged and pervasive drug conspiracy.  (*Id.* at 42–44.)  That she then became a fugitive for over two years after the murder likewise revealed a deeply troubling lack of respect for the law.  (*Id.* at 45.)  Furthermore, the sentence imposed was proportional to the sentence of Antomattei, who, despite having no role in the murder of Aisha, was sentenced to thirty years for his comparable narcotics activities.  (*Id.* at 47–48; *see also* Doc. No. 333 at 1.)  Weighing these facts against post-sentencing developments – such as Morales's continued expressions of remorse, her presumably sincere (but unsubstantiated) efforts at rehabilitation over the past eight years,[5] and her more detailed (but unremarkable) explanation for why she became a fugitive – the Court is not convinced that a sentence reduction is warranted at this time.  (*Supra* n.2; Doc. No. 705 at 13–14; Doc. No. 724 at 4–5.)

That said, the Court encourages Morales to continue her efforts toward self-improvement, as a longer and more robust track record of rehabilitation could positively impact any future analysis of the section 3553(a) factors.  Moreover, rehabilitation is not the only factor relevant to

---

[5] Indeed, while Morales states that she has "excel[led] at her post-conviction rehabilitation" (Doc. No. 705 at 13), the Court notes that she also has a somewhat concerning pattern of disciplinary incidents while in prison, including having been sanctioned for possession of drugs or alcohol in July 2021 (Doc. No. 723, Ex. B at 2) and for assaulting another inmate in February and June 2019 (*id.* at 3–4).

the section 3553(a) analysis that may change over time.[6]  However, at this moment, less than a decade into her lengthy prison term, it cannot be said that a reduction in Morales's sentence is consistent with the objectives set forth in 18 U.S.C. § 3553(a).

For all these reasons, Morales's motion is DENIED without prejudice to future renewal. The Clerk of Court is respectfully directed to mail a copy of this Memorandum and Order to Morales.

SO ORDERED.

Dated: July 26, 2023
New York, New York

RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

---

[6] For instance, as Morales briefly alludes to in her motion, the length of federal sentences for murder arguably has declined in recent years – a trend that could be pertinent to 18 U.S.C. § 3553(a)(6). (Doc. No. 705 at 15–16 n.9.)